### BENEDICT AND MINER, TRUSTEES, v. MARKET NATIONAL BANK.

1. AGREEMENT AMOUNTING TO A PREFERENCE.

   The making of an agreement by a corporation with a bank at the time of procuring a loan, that in the event the corporation should be compelled to make an assignment the bank should be notified in time to reduce its cognovit note to judgment and levy execution before the deed of assignment was filed, renders invalid the execution thereafter levied in accordance with the agreement and just before the making of an assignment.

2. FACTS NOT SUFFICIFNT TO VALIDATE.

   The fact that at the time such note was given part of the money covered by it was actually loaned the company, and the further fact that at that time the company was believed to be solvent and it was hoped that an assignment might be averted, does not validate the agreement or levy.

3. COURT OF INSOLVENCY—NO JURISDICTION OVER COMMON PLEAS JUDGMENTS.

   An assignment does not vest the court of insolvency with jurisdiction to pass upon judgments of the court of common pleas; the only court competent to pass upon the validity of the judgment of that court is a court of general equity jurisdiction.

APPEAL from the Court of Common Pleas of Hamilton county.

SWING, J.

This cause came into this court on appeal from the court of common pleas.

The action was brought by Benedict and Miner, as trustees of the Miner & Moore Furniture Company, a corporation under the laws of Ohio, which had heretofore made an assignment for the benefit of creditors, to set aside a judgment and levy obtained by said bank against

said Miner & Moore Company just previous to the assignment of said company.

The material facts in brief are : That on the morning of June 9, 1896, the bank obtained a judgment against the furniture company on a cognovit note for the sum of $9,090; that immediately upon the rendition of the judgment execution was issued and the sheriff immediately levied upon all the property of said company ; that as soon as the levy was made by the sheriff said furniture company placed on file in the insolvency court of said county its deed of assignment. On the following day, by an agreement entered into between the sheriff and the assignee, all the property was turned over to the assignee for the purpose of permitting the said assignee to sell said property, the proceeds of said sale to be liable to be applied to the payment of the execution. That the evidence clearly shows that the amount of said note was made up of two items—one of $3,500, which was borrowed by said company from said bank, and the other of $5,500, which was borrowed by Miner, a stockholder, to purchase the stock of another stockholder, and that as far as the furniture company was concerned it was simply an indorser, which fact was known to the bank at the time, and in fact said indorsement was made by the company at the request of the bank. That it clearly appears that at the time of the giving of the note of $9,000, on which the judgment was taken, the company was very much in need of money, and $1,500 was loaned to it by the bank at the time, which sum was a part of the $9,000 note, but it was hoped that this amount of money would enable the company to pull through, for it was believed by the officers of the company that the company was solvent, although at the time it was in distress. At the time of the giving of the note the bank was made aware of the condition of the company, and it was then agreed, as part of the consideration of the loaning of said additional $1,500 and the giving of said cognovit note, that if the company should at any time find out that they could not continue business and would be forced to make an assignment, that the company would inform the bank in time for the bank to get judgment on the note and have execution levied before the assignment should be made. Acting in accordance with this agreement, the company did inform the bank on the day before it made the assignment that they could not continue business any longer and that it would, on the following day, make an assignment, and for the bank to proceed to get its judgment. The company did nothing towards completing the assignment until informed that the levy had been made on said judgment, and then immediately made the assignment to one who was agreed upon by the bank and the company as the person to whom the assignment was to be made at the time the $9,000 cognovit note was made, if an assignment became necessary.

Upon this state of facts should this judgment and levy stand? The Supreme Court in Rouse, Trustee, v. Bank, 46 Ohio St., 493, held that " A corporation for profit, organized under the laws of this state, after it has become insolvent, and ceased to prosecute the object for which it was created, cannot, by giving some of its creditors mortgages on the corporate property to secure antecedent debts without other consideration, create valid preferences in their behalf over the other creditors, or over a general assignment thereafter made for the benefit of creditors."

This holding is not in accordance with the decisions of many of the Supreme Courts of other states or of the Supreme Court of the United States, but it is in accordance with natural justice and is the law of this

state. Preferences created in any other way than by mortgages must be, for the same reason, invalid.

Was a preference created by the giving of this cognovit note and reducing it to judgment and levying upon the property at a time when the corporation was insolvent and had ceased to prosecute the objects for which it was created?

At the time the note was given the company had not ceased to prosecute the objects for which it was created, nor was it believed by its officers or the bank to be insolvent, but it was very considerably involved and much in need of money, and it was feared and contemplated by both the officers and the bank that it might become insolvent and be forced to make an assignment and wind up its business, and with this in view it was agreed between said officers that when the time came the bank should be notified in time to procure a judgment and levy on the property of the corporation, so that the claim of the bank should become a preference and be secured. This agreement made between the bank and the company was afterwards carried out in perfect good faith by the company; and the bank did secure a preference by its judgment and levy on the property of the corporation at a time when the corporation was insolvent, and had ceased to prosecute the objects for which it was created. If after the company had become insolvent, and had ceased to prosecute its business and had concluded to make an assignment, it had given a cognovit note for an antecedent debt, and informed the bank of its condition and intention and had waited until the bank had procured judgment and a levy on all the property of the company before filing its deed of assignment, an invalid preference would have been created. This would have brought it directly within the holding in Rouse v. Bank, *supra*. A preference would have been created, the only defense being in the means by which it was done—in this case by a cognovit note and in that by a mortgage. There could be no reason why one should be invalid and the other not.

Does the fact that $1,500 was loaned to the company by the bank at the time of the giving of the note, and the further fact that at that time the company was believed to be solvent and it was hoped that an assignment might be averted, validate the proceedings?

In our judgment the giving of the note, and the promise to satisfy the bank in the event that an assignment should be determined upon, in time to get a preference, and the giving of this notice and the procurement of the preference by reason of the judgment and levy, constituted one transaction, and that it should be considered as of the time when the judgment was taken and the levy made. The fact that at the time of the giving of the note the promise was made to notify the bank, in the court of insolvency, in time for the bank to reduce its note to judgment and procure a preference by means of a levy, is what connects the transactions and makes them one. In our judgment this was an invalid preference and comes directly within the ruling of our Supreme Court in Rouse v. Bank, *supra*. A case directly in point is to be found in the 126 Ill., 585.

But it is argued that the court of common pleas had no jurisdiction to set aside said judgment; that an assignment having been made, the court of insolvency became vested with exclusive jurisdiction to determine all questions arising out of said assignment; but we do not consider this contention well taken, for if this judgment and levy were valid as far as this property was concerned, nothing was assigned, or at the

farthest, only what was left of the satisfaction of said judgment. It is said in Ryan v. Root & McBride, 56 Ohio St., 308 : " The levy made on the Fischel execution having covered the entire property seized before the assignment was made, nothing was left for the assignment to fasten upon." The only court competent to pass upon the validity of the judgment of the court of common pleas must be a court of general equity jurisdiction. The court of insolvency could not do this.

In our opinion therefore, the judgment of the court of common pleas and the levy made thereon should be set aside and held for naught, on the ground that it was an invalid preference.

*Edward Barton*, for the plaintiffs.

*Kramer & Kramer* and *Gray & Tischbein*, for the bank.

---

## ALIMONY—COSTS—CONTEMPT.